THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| KEVIN SPENCER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BWI NORTH AMERICA, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [164] MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:16-cv-00427-DBB-JCB<br><br>District Judge David Barlow |

Before the court is Defendant BWI North America's (BWI) Motion for Summary Judgment.[1] BWI argues that Plaintiff's claims are barred by the statute of limitations and that the Amended Complaint does not relate back to an earlier pleading. Having reviewed the briefing and relevant law, the court rules as follows.

## BACKGROUND

On May 13, 2014, Plaintiff Kevin Spencer, an officer with the Salt Lake Unified Police Department (UPD), was injured in an accident during a training drill while riding his department-issued Harley-Davidson motorcycle.[2] The motorcycle was equipped with an anti-lock braking system (ABS).[3] When Spencer applied the brakes as part of the drill, the front and rear wheels locked, causing him to fall when the motorcycle washed out.[4] He broke his leg and

---

[1] BWI North America's Motion for Summary Judgment, ECF No. 164.

[2] *Id.* at ¶ 1.

[3] *Id.* at ¶ 2.

[4] *Id.* at ¶ 3.

was admitted to a hospital for surgery.[5] After the accident, UPD took possession of the motorcycle and moved it to an evidence storage location.[6]

On May 27, 2014, after two weeks in the hospital, Spencer was discharged.[7] On the same day, he visited the scene of the accident with a co-worker.[8] At the scene, Spencer saw the skid marks and had the impression that the ABS failed causing the motorcycle to skid and fall.[9] He was able to reach this conclusion, in part, because of his extensive experience with motorcycles: (1) he had been around motorcycles since he was a toddler;[10] (2) he began riding motorcycles when he was sixteen and worked on them all the time;[11] (3) he has owned more than ten motorcycles;[12] (4) he has performed maintenance on his personal motorcycles;[13] (5) he has received hundreds of hours of motorcycle training;[14] and (6) at the time of his accident, he had ridden roughly 20,000 miles per year between personal and work motorcycles.[15]

The motorcycle involved in Spencer's accident was inspected at least three times before Spencer filed his original complaint.[16] Spencer attended two of these inspections of the

---

[5] *Id.* at ¶ 4; Ex. 1 to Motion for Summary Judgment, SPENCER000117, 123, 125; ECF No. 164-1 at 4, 10, 12.
[6] ECF No. 164 at ¶ 5; *see* Ex. 2 at 18–19; ECF No. 164-1 at 32–33.
[7] ECF No. 164 at ¶ 6; *see* Ex. 3 at SPENCER000246–49; ECF No. 164-1 at 37–40.
[8] ECF No. 164 at ¶ 7; Ex. 4, Depo. of Kevin Spencer, 125–26; ECF No. 164-1 at 73–74.
[9] ECF No. 164 at ¶ 8; Ex. 4 at 126.
[10] ECF No. 164 at ¶¶ 9–14; Ex. 4 at 16.
[11] ECF No. 164 at ¶ 11; Ex. 4 at 24, 48.
[12] ECF No. 164 at ¶ 12; Ex. 4 at 24–25.
[13] ECF No. 164 at ¶ 13; Ex. 4 at 48.
[14] ECF No. 164 at ¶ 14; *see* Ex. 4 at 27, 28; Ex. 5 at 38–40, ECF No. 164-1 at 99.
[15] ECF No. 164 at ¶ 15; Ex. 5 at 22.
[16] *See* Exh. 2 at 4–5.

motorcycle with his counsel and representatives of Harley-Davidson, one on June 8, 2015, and another on November 11, 2015.[17]

On June 8, 2015, Spencer, his counsel, his expert, Harley-Davidson's counsel, and Harley-Davidson's principal engineer inspected the motorcycle.[18] Although it was originally planned as a "visual only" inspection, Harley-Davidson requested removal of the left side saddlebag and cover in order to access the diagnostic port.[19] The ABS unit was inspected only as it remained installed on the motorcycle.[20] Although visible, the ABS unit was largely obstructed by a molded platform holding it in place and the BWI label could not be seen.[21]

On November 11, 2015, Spencer, his counsel, his expert, and counsel for UPD inspected the motorcycle a second time.[22] At that inspection, Detective Anderson removed the motorcycle from evidence and rode it to observe whether the ABS-system light worked properly.[23] No parts were removed during this inspection.[24]

Spencer's counsel and a retained expert later attended a March 22, 2016 inspection along with counsel and an engineer from Harley-Davidson, as well as representatives from UPD.[25] At

---

[17] Ex. 4 at 126–27; *see also* Declaration of Scott Kimbaugh, Exhibit B to Opposition to Motion for Summary Judgment at ¶¶ 4, 29; ECF No. 176-1 at 230–34.

[18] *Id.*

[19] Ex. B at ¶ 5.

[20] Ex. A at ¶ 13.

[21] ECF No. 176 at ¶¶ 14, 23; Ex. A at ¶ 14; Ex. B at ¶¶ 26, 27 ("Based on the location of the BWI label on the ABS module (the bottom) and . . . how the ABS module was secured into the motorcycle, it was not possible to see the BWI label prior to removing the ABS module from the motorcycle.").

[22] *Id.* Representatives from Harley-Davidson were not present at this inspection. *See* Response to Interrogatory No. 1, ECF No. 164-1 at 18 ("Plaintiff, UPD employee Michael S. Anderson, Harry Souvall, Scott Kimbrough, and counsel for Plaintiff examined the motorcycle on November 11, 2015, at which time the motorcycle was, powered on, and ridden about one block at very slow speed, as contained in the video (attached).").

[23] *See* Ex. 6 at 82–84.

[24] ECF No. 176 at ¶ 16; Ex. B at ¶ 30.

[25] ECF No. 164 at ¶ 28; Ex. 8 at ¶ 3; Ex. A at ¶¶ 3, 4.

the March 22 inspection, Harley-Davidson's engineer inspected the motorcycle a third time.[26] During that inspection, the ABS module that was installed on Spencer's motorcycle at the time of his accident was removed.[27] The electronic control unit attached to the ABS module contained a label stating it was manufactured by BWI Group.[28] Prior to these three inspections, Spencer personally did not ask to inspect or see the motorcycle that remained in the possession of UPD.[29]

On April 22, 2016, almost two years after suspecting his accident was caused by an ABS failure, Spencer filed suit in Utah state court against Harley-Davidson entities as well as unnamed entities.[30] Spencer alleged: "Plaintiff has reviewed [publicly] available information online and has not been able to identify any component part sub-manufacturer."[31] He also asserted that to the extent such component manufacturers exist, "they are incorporated by identification of ENTITIES I through X."[32] Christopher Higley, counsel for Spencer, submitted a declaration with the original Complaint stating that he had asked counsel for the Harley-Davidson entities to identify outside component part manufacturer or technology providers for its ABS system.[33] Higley further asserted that counsel for Harley-Davidson declined to provide the information short of written discovery requests.[34] However, Spencer's counsel obtained and

---

[26] *See* Ex. 8, Decl. of Thomas D. McGowan at ¶ 3; ECF No. 164-1 at 150.

[27] *See id.* at ¶¶ 8, 9.

[28] *Id.*; Ex. 10, Decl. of Joseph A. Elliot at ¶ 7; ECF No. 164-1 at 177. Spencer later acknowledged in his deposition that the label on the ABS unit indicated that the BWI Group was involved in the manufacturing. ECF No. 164 at ¶ 30; Ex. 4 at 129–30.

[29] Ex. 4 at 132:12–17 ("Before the inspections that you attended with your counsel and outside of any instruction given by your counsel, did you personally ever ask to look at or inspect the motorcycle on your own? Answer: No.").

[30] *See* ECF No. 164 at ¶ 17; *see* Notice of Removal, ECF No. 2; *Spencer v. Harley-Davidson, Inc.*, Case No. 2160902616, Third Judicial District Court, State of Utah; Complaint, ECF No. 2-3.

[31] ECF No. 164 at ¶ 18; ECF No. 2-3 at ¶ 15.

[32] ECF No. 2-3 at ¶ 15.

[33] *See generally* Ex. A to Complaint, Decl. of Christopher Higley, ECF No. 2-3 at 13–14.

[34] *Id.* at ¶ 7.

reviewed the motorcycle's owner's manual and found that BWI was not identified as a component manufacturer.[35] Despite spending several hours also searching Google, Spencer's counsel was unable to identify the manufacturer of the AMD system.[36]

Contrary to the allegation in his Complaint, Spencer later testified that he did not personally do any research to identify component part manufacturers of the ABS system.[37] Spencer did not research publicly available information, did not contact the local dealer Harley-Davidson of Salt Lake (SLHD), and did not contact Harley-Davidson itself.[38]

On April 26, 2017, almost three years after his accident, Plaintiff filed his First Amended Complaint naming BWI as a defendant for the first time.[39] In the Amended Complaint, Spencer asserted that "Plaintiff's counsel has conducted research and discovery to identify other component part sub-manufacturer(s)" and "[t]o the extent they exist, they are incorporated by identification of ENTITIES I through X."[40] At the time he filed the First Amended Complaint, Spencer also knew that Harley-Davidson did not make all of the motorcycle components or systems on the motorcycle involved in his accident.[41]

## STANDARD OF REVIEW

---

[35] ECF No. 176 at 8–9; *see* Ex. A at ¶¶ 23–27.

[36] Ex. A at ¶¶ 4, 5.

[37] Ex. 4 at 21–22, 132–34.

[38] ECF No. 164 at ¶ 20; Ex. 4 at 21–22, 132–34. Spencer objects to BWI's Exhibit 10, Declaration of Joseph A. Elliott. *See* ECF No. 176 at 6–7. Supported by the Elliott Declaration, BWI asserts that Spencer "had access [to] authentic Harley-Davidson parts and components" and that an inspection of any of the other UPD fleet motorcycles would have "revealed an identical part with an identical label and preserved relevant evidence." *See* ECF No. 164 at 5, 13. No facts in the Elliott Declaration establish that he has personal knowledge of Spencer's access to certain parts or personal knowledge of the parts equipped on UPD fleet vehicles. *See* Fed. R. Evid. 602. Therefore, the court sustains the objection. *See* Fed. R. Civ. P. 56(c)(2).

[39] *See generally* First Amended Complaint, ECF No. 32.

[40] *Id.* at ¶ 33.

[41] ECF No. 164 at ¶ 16; Ex. 4 at 20.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[42] The moving party bears the initial burden and, if the burden is satisfied, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts, identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein, from which a rational trier of fact could find for the nonmovant."[43] The court views the evidence and draws reasonable inferences in the light most favorable to the nonmoving party.[44] "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment in favor of the moving party is proper."[45]

## ANALYSIS

In its motion, BWI argues that Spencer's claims are barred by the relevant statute of limitations and the limitations period is not tolled by Utah's discovery rule.[46] BWI also argues that Spencer's First Amended Complaint does not relate back to the original complaint.[47]

### I. A Genuine Dispute of Fact Exists as to Whether Spencer Exercised Due Diligence to Discover the Identity of the ABS Manufacturer.

"The statute of limitations for a cause of action begins to run when 'the cause of action has accrued.'"[48] "A cause of action accrues upon the happening of the last event necessary to

---

[42] Fed. R. Civ. P. 56(a).

[43] *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000) (citation and internal quotation marks omitted).

[44] *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1197 (10th Cir. 2000).

[45] *Concrete Works of Colorado, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (brackets and internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[46] ECF No. 164 at 8–10, 10–18.

[47] *Id.* at 19–20.

[48] *Pinder v. Duchesne County Sheriff*, 2020 UT 68, ¶ 71, 478 P.3d 610 (quoting Utah Code Ann. § 78B-2-102).

6

complete the cause of action."[49] "And if a plaintiff does not bring the cause of action within the limitations period, the action is barred."[50] However, as relevant here, a statutory discovery rule can toll the limitations period.[51] "A statutory discovery rule applies only when a statute of limitations applicable to a cause of action, by its own terms, mandates application of the discovery rule."[52]

The Utah Product Liability Act (UPLA) requires that a civil action be brought "within two years from the time the individual who would be the claimant in the action discovered, or in the exercise of due diligence should have discovered, both the harm and its cause."[53] "The UPLA applies to all claims . . . that are brought against a manufacturer based on a defective product in both tort and contract, including claims based on negligence, strict liability, tortious misrepresentation, and breach of warranty."[54] Because a statute of limitations claim bar is an affirmative defense, the defendant bears the burden of proving its application.[55]

By its plain terms, the UPLA mandates application of the discovery rule.[56] The Utah Court of Appeals has explained that this provision generally "tolls the running of the statute of

---

[49] *Petersen v. Utah Lab. Comm'n*, 2017 UT 87, ¶ 13, 416 P.3d 583 (citation, brackets, and internal quotation marks omitted).

[50] *Id.* (citing *Davis v. Provo City Corp.*, 2008 UT 59, ¶ 27, 193 P.3d 86 (observing that statutes of limitations "cut off the right to bring an action after a particular period of time")).

[51] *See In re Hoopiiaina Tr.*, 2006 UT 53, ¶ 35, 144 P.3d 1129. Utah courts also apply an equitable discovery rule under certain circumstances. *See id.* (stating that "there are two situations in which an equitable discovery rule will operate to toll a statute of limitations: '(1) where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct, and (2) where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust'" (quoting *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 25, 108 P.3d 741)). Spencer does not argue that the equitable discovery rule should apply under the circumstances.

[52] *Id.* (citation and internal quotation marks omitted).

[53] Utah Code Ann. § 78B-6-706.

[54] *Skinner v. Ethicon, Inc.*, 2021 WL 1222157, at *5 (D. Utah Mar. 31, 2021) (citation and internal quotation marks omitted).

[55] *Id.* (citing Utah R. Civ. P. 8(c), 9(h); *Cahill v. Am. Fam. Mut. Ins. Co.*, 610 F.3d 1235, 1238 (10th Cir. 2010)).

[56] *See* Utah Code Ann. § 78B-6-706.

limitation until the plaintiff discovers, or in the exercise of due diligence should have discovered, the identity of the manufacturer."[57] "Under *Aragon*, the UPLA statute of limitations begins to run when the plaintiff discovers or should have discovered: (1) that she has been injured; (2) the identity of the maker of the allegedly defective product; and (3) that the product has a possible causal relation to her injury."[58] Because the provision "requires a plaintiff to exercise due diligence in discovering the harm and its cause, 'all that is required to start the running of the limitation period is information sufficient to put the plaintiff on notice to make further inquiry.'"[59]

Here, no genuine dispute exists as to the first and third parts of the *Aragon* test. Spencer was injured in a motorcycle accident on May 13, 2014.[60] He does not dispute that he discovered the harm from the accident no later than May 13, 2014.[61] As to discovering the possible causal relation to a product, Spencer believed there likely had been an ABS system failure when he returned to the crash site two weeks later on May 27, 2014.[62] Based upon his extensive experience with motorcycles, he concluded that the ABS system failed, causing the brakes to lock up and the bike to skid leading to his injury.[63] Spencer identified the possible cause of his

---

[57] *Aragon v. Clover Club Foods Co.*, 857 P.2d 250, 253 (Utah Ct. App. 1993) (quoting Utah Code Ann. § 78-15-3 (1992)) (interpreting an earlier, nearly identical version of the same statute of limitations provision in the UPLA). Absent a Utah Supreme Court decision describing "the precise contours of Utah's discovery rule," this court follows the Utah Court of Appeals' *Aragon* decision. *See Skinner*, 2021 WL 1222157, at *5.

[58] *Id.* (quoting *Aragon*, 857 P.2d at 252–53; *Mecham v. C.R. Bard, Inc.*, 2020 WL 2768997, at *3 (D. Utah May 27, 2020)).

[59] *Adams v. Am. Med. Sys., Inc.*, 705 F. App'x 744, 746 (10th Cir. 2017) (unpublished) (quoting *Griffiths-Rast v. Sulzer Spine Tech*, 216 Fed.App'x. 790, 795 (10th Cir. 2007) (unpublished)).

[60] ECF No. 164 at ¶ 1.

[61] *Adams*, 705 F. App'x at 746–47 ("The relevant 'harm is the physical injury or illness suffered by the plaintiff as a result of the defendant's conduct.'" (quoting *Griffith-Rast*, 2005 WL 2237635, at *4, *aff'd*, 216 Fed. App'x. 790 (10th Cir. 2007) (unpublished)); *see generally* ECF No. 176.

[62] Ex. 4 at 126.

[63] Ex. 4 at 103–06; Ex. 5 at 73–76, 85–86.

injury no later than May 27, 2014.[64] Thus, the only remaining question is when Spencer discovered, or could have discovered in the exercise of reasonable diligence, the identity of the ABS unit manufacturer.

After the accident, UPD took possession of the motorcycle and secured it in an evidence storage space.[65] As noted, Spencer suspected the ABS unit on the motorcycle failed and caused the accident.[66] Spencer hired counsel to pursue all claims related to the accident.[67] Although Spencer did not personally attempt to identify the ABS unit manufacturer, his counsel obtained and reviewed a copy of the motorcycle's owner's manual and spent hours searching the internet.[68] Neither effort proved fruitful in identifying BWI as a manufacturer of the motorcycle's ABS system.[69]

During an initial inspection of the motorcycle on June 8, 2015, Harley-Davidson allowed removal of the left-side saddlebag at which point the ABS module could be seen as it was installed on the motorcycle.[70] Although the ABS module was partially exposed, nothing visible on that part of the unit revealed a manufacturer.[71] It was not until the March 22, 2016 inspection with Harley-Davidson's engineer that Spencer, through his retained expert, was able to see and

---

[64] *See generally* ECF No. 176; *see Skinner*, 2021 WL 1222157, at *5; *Aragon*, 857 P.2d at 252–53.
[65] ECF No. 164 at ¶ 5.
[66] *Id.* at ¶¶ 6–8
[67] ECF No. 176 at 8.
[68] *See* ECF No. 176 at 8–9; Higley Dec. at ¶¶ 2, 23–32.
[69] *Id.*
[70] ECF No. 176 at 15 ¶¶ 10, 13; Ex. B, Kimbrough Dec. at ¶¶ 4–12.
[71] ECF No. 176 at ¶ 14; *see* Kimbrough Dec. at ¶¶ 4–12.

document the ABS module unit being removed from the motorcycle.[72] The bottom of the ABS module displayed a plaque identifying BWI Group.[73]

Therefore, no later than March 22, 2016, Plaintiff discovered the identity of the ABS manufacturer. Spencer filed the instant action in April 2016, but did not name BWI as a defendant until April 26, 2017, within two years of the discovery date.[74] But this does not end the analysis because the limitations period would begin earlier if Spencer could have discovered BWI's identity at an earlier date in the exercise of due diligence.[75] In this context, "[d]ue diligence is a highly fact-sensitive determination" and it "must be tailored to fit the circumstances of each case."[76] "It is that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so."[77] Generally, "when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact for the jury," but "[w]here the evidence is so clear that there is no genuine factual issue, . . . the determination can be made as a matter of law."[78] Viewing the evidence and reasonable inferences in favor of Spencer, the undisputed evidence before the court is not so clear that this decision may be made as a matter of law. That is, issues of fact preclude summary judgment.

Spencer's counsel reviewed the owner's manual, engaged in internet research, and participated in inspections of the motorcycle.[79] Until the third inspection of the motorcycle, none

---

[72] Kimbrough Dec. at ¶ 23; ECF No. 176 at 11–13 ¶¶ 18–27.

[73] ECF No. 176 at ¶¶ 21, 22; Ex. B at ¶ 23.

[74] *See generally* ECF Nos. 2, 32.

[75] *See* Utah Code Ann. § 78B-6-706.

[76] *Aragon*, 857 P.2d at 253 (citation and internal quotation marks omitted).

[77] *Id.*

[78] *McKinnon v. Tambrands, Inc.*, 815 F. Supp. 415, 418 (D. Utah 1993).

[79] *See* ECF No. 176 at 8–9; Higley Dec. at ¶¶ 2, 23–32.

of these efforts revealed BWI as the ABS manufacturer.[80] Additionally, a factfinder might determine that Spencer's counsel's efforts to identify a separate ABS manufacturer were limited by Harley-Davidson's refusal to identify a manufacturer, the restrictions imposed by Harley-Davidson on inspecting the motorcycle, and counsel's interest in avoiding destructive inspection measures.[81] The court's role at this juncture is not to assess credibility or weigh the evidence, but to evaluate whether these facts are sufficient that a reasonable jury could conclude that the efforts constituted exercise of due diligence.

BWI argues that the result here should be informed by the *Griffiths-Rast* and *Pratt* cases, but both are factually distinguishable.[82] In *Griffiths-Rast,* the trial court found that plaintiff "knew the name of the device implanted in her spine prior to her surgery."[83] On appeal, the Tenth Circuit stated that "in a normal case a reasonable jury could not find that it would take over two years to determine the manufacturer of a *trademarked medical device when the party knows the correct name of that device.*"[84] By contrast, here the Plaintiff did not have this information and made at least some additional effort to find it.[85] On the other hand, *Pratt* is closer factually, but it still has important differences. There, Plaintiff knew that some AmeriGas entity was responsible for harm caused by a leaking propane tank with "AmeriGas" printed on the side, making inquiry much easier.[86] When the plaintiffs contacted an AmeriGas entity "plaintiffs were immediately

---

[80] *See Macris v. Sculptured Software, Inc.*, 2001 UT 43, ¶ 18, 24 P.3d 984 ("We have held that all that is required to trigger the statute of limitations is sufficient information to put plaintiffs on notice to make further inquiry if they harbor doubts or questions.").

[81] *See* Higley Dec. at ¶¶ 10, 12; Kimbrough Dec. at ¶ 28.

[82] *See* ECF No. 164 at 10–12.

[83] *Griffith-Rast v. Sulzer Spine Tech, Inc.*, 2005 WL 2237635, at *4 (D. Utah Sept. 14, 2005)*, aff'd* 216 F. App'x 790 (10th Cir. 2007) (unpublished).

[84] *Griffiths-Rast*, 216 F. App'x at 796 (emphasis added).

[85] *See* Higley Decl. at ¶¶ 23–38.

[86] *See Pratt v. Cavagna N. Am., Inc.*, 2013 WL 6146075, at *1, *3 (D. Utah Nov. 21, 2013) (unpublished).

11

informed that AmeriGas Propane, L.P. was the proper defendant."[87] Here, there is no evidence of record that Plaintiff knew BWI or any similar entity was involved until the third inspection on March 22, 2016.[88] BWI also argues that there were a number of other steps Plaintiff could and should have taken to determine who made the ABS unit.[89] That may be the case, but on this record it will be for the jury to weigh whether the steps that were taken were sufficient when considered with those other steps that might have been taken. BWI also argues that Plaintiff "knew that Harley-Davidson was not the only manufacturer of the motorcycle and its components . . . on or before May 27, 2014" and therefore the statute of limitations clock began running then.[90] The relevant deposition testimony from Plaintiff does not support the date cited by BWI. The question posed by counsel at the deposition references what Plaintiff knew when the "First Amended Complaint" was filed.[91] That date is April 26, 2017, not May 27, 2014.[92]

The court is required to construe the facts and all reasonable inferences from them in the light most favorable to the non-moving party. On the facts before it, the court cannot conclude that no reasonable jury could find that Spencer exercised reasonable diligence in discovering

---

[87] *Id.* at *4.

[88] *See generally* ECF Nos. 2, 32; Higley Decl.

[89] ECF No. 164 at 11–15.

[90] *Id.* at 9; *see also* ECF No. 179 at 1.

[91] *See* Depo. of Kevin Spencer at 19:24–20:10.

[92] ECF No. 32.

BWI's identity.[93] Accordingly, as is typically the case,[94] whether Plaintiff exercised reasonable diligence under these circumstances is a question for the factfinder.[95]

## II. Spencer's First Amended Complaint Does Not Relate Back to the Date of the Original Complaint.[96]

Rule 15(c) of the Federal Rules of Civil Procedure provides that if certain conditions are met, a pleading amendment "relates back to the date of the original pleading" making the amendment timely "even though it was filed outside an applicable statute of limitations."[97] "Moreover, the Rule mandates relation back once the Rule's requirements are satisfied."[98] "In order for an amendment adding a new party to relate back to the date of the original complaint under Rule 15(c), all the conditions set forth in [the Rule] must be met."[99] Specifically, relation back is required when an amendment:

> changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

---

[93] BWI also argues that an alleged loss of access to evidence supports a conclusion that the case should be dismissed. *See* ECF No. 164 at 16–18. In support, however, BWI cites only a broad statement about the general policy served by limitations periods. *Id.* at 16–17. In setting a two-year statute of limitations with a statutory discovery rule, the Utah Legislature presumably considered the purpose of limitations of action in the products liability context, as well as the potential problems from extended delays, including the loss of evidence. The Legislature settled on the UPLA limitations language the court applies in the instant decision. It is the text of the statute, not arguments about the purposes surrounding them, which guides the court's decision. The potential loss of evidence does not change how the statute operates.

[94] *See Griffiths-Rast*, 216 F. App'x at 796 (observing that, "generally, the question of when a plaintiff knew, or with reasonable diligence should have known, of a cause of action is a question of fact for the jury" (brackets, citation, and internal quotation marks omitted)).

[95] Because the court cannot determine at this stage of the proceedings whether Spencer exercised due diligence in determining the identity of the ABS manufacturer, it cannot determine whether his First Amended Complaint was untimely when filed.

[96] Spencer offers no briefing on this argument.

[97] *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).

[98] *Id.* at 553.

[99] *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1389 (10th Cir. 1984).

13

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.[100]

In his original Complaint, Spencer included claims against "Entities I through X," unidentified "business entities that operate in companion with, and/or under the direction of [Harley-Davidson, Inc. or Harley-Davidson Motor Complany, Inc.] in the design and manufacture of Harley-Davidson motorcycles and its various component parts."[101] In the subsequent amendment, Spencer named BWI as a defendant.[102]

BWI contends, and Spencer does not dispute, that BWI did not receive notice of the action prior to the amendment and that it did not know or have reason to know that the action would be brought against it "but for a mistake concerning the proper party's identity."[103] This is not a situation in which Spencer errantly misnamed BWI in his original complaint.[104] Rather, Spencer did not know the identity of the ABS manufacturer. "[A]s a matter of law, a plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake concerning the identity of the proper party.'"[105] Because the relation-back elements have not been satisfied, Spencer's Amended Complaint does not relate back to the date of his original Complaint.

---

[100] Fed. R. Civ. P. 15(c)(1)(C).

[101] ECF No. 2-3 at ¶ 4.

[102] ECF No. 32 at ¶ 9.

[103] ECF No. 164 at 19–20; *see* Fed. R. Civ. P. 15(c)(1)(C).

[104] *See Garrett v. Fleming*, 362 F.3d 692, 696–97 (10th Cir. 2004) ("[T]he mistake proviso was included in order to resolve the problem of a misnamed defendant and allow a party to correct a formal defect such as a misnomer or misidentification." (brackets, ellipsis, and internal quotation marks omitted) (quoting *Wayne v. Jarvis*, 197 F.3d 1098, 1103 (11th Cir. 1999), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003))).

[105] *Id.* at 696.

**ORDER**

For the reasons stated in this Memorandum Decision and Order, the court GRANTS IN PART and DENIES IN PART Defendant BWI's motion for summary judgment.[106] The court GRANTS the motion with respect to the determination that Plaintiff's Amended Complaint does not relate back to the filing date of the original Complaint. The court DENIES the motion with the respect to the request for dismissal of claims against BWI based upon the running of the statute of limitations.

Signed June 10, 2021.

BY THE COURT

David Barlow
United States District Judge

---

[106] ECF No. 164.